**MEMO ENDORSED**

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

January 7, 2020

**VIA ECF**

**EX PARTE**

The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: *1- 7. 20*

**Re: *United States v. Tyrell Murphy, a/k/a "Fat Cat,"* 19 Cr. 846 (ALC)**

Dear Judge Carter:

The Government respectfully submits this letter to request that the Court stay the release order pertaining to defendant Tyrell Murphy, a/k/a "Fat Cat" ("the defendant"), which was issued by a magistrate judge in the District of Vermont yesterday, January 6, 2020. The Government requests that the Court stay the defendant's release and order him remanded for purposes of transfer to this District, pursuant to Rule 5(c)(3), at which point the parties can be heard on bail at a date and time set by this Court, which has jurisdiction over the underlying matter. At the request of the Government, the Vermont magistrate judge stayed the release order until 3:30 p.m. today, to enable the Government to appeal to this Court.

### I. Background

On November 21, 2019, a grand jury in this District returned a sealed Indictment (the "Indictment") charging the defendant and 11 co-conspirators with participating in a crack cocaine distribution organization (the "AK Houses Crew") operating in the vicinity of the AK Houses apartment complex located at East 128th Street in the Harlem neighborhood of Manhattan, New York, in violation of Title 21, United States Code, Sections 841(b)(1)(A) and 846. A copy of the Indictment is attached hereto as Exhibit A. As reflected in the Indictment, members of the AK Houses Crew, including the defendant, sold large amounts of crack cocaine to undercover New York City Police Department ("NYPD") officers, and the Crew used firearms and threats of violence to maintain control of their crack distribution operation.

The defendant has trafficked crack not only in New York City, but also in Vermont, where he has sold crack to undercover officers on multiple occasions. For example, on or about November 26, 2019, the defendant sold approximately 1.5 grams of crack to an undercover officer working for the Burlington, Vermont Police Department ("Burlington PD").

January 7, 2020
Page 2 of 5

On December 11, 2019, the NYPD arrested six of the defendant's co-defendants in the New York City area on the charges contained in the Indictment, which was unsealed. Law enforcement was unable to locate and arrest the defendant at that time. Since then, the NYPD has been actively seeking to find and arrest the defendant.

The next day, on or about December 12, 2019, the defendant sold approximately .7 grams of crack cocaine to an undercover officer for the Burlington PD. Thereafter, on or about January 6, 2020, the defendant was arrested by the Burlington PD in connection with his sales of crack to undercover officers in Vermont. On the defendant's person at the time of his arrest, Burlington PD found and seized an additional approximately 2.4 grams of crack. In addition, Burlington PD obtained consent to search the residence where the defendant was staying, where they located approximately 1.2 additional grams of crack cocaine in the defendant's bedroom. All of the substances referenced herein have field tested positive for crack cocaine.

On the afternoon of January 6, 2020, the defendant was presented before Magistrate Judge John M. Conroy of the District of Vermont pursuant to Rule 5(c)(3). During the presentment, the Government cited the applicable presumption in favor of detention, in light of the narcotics trafficking charges against the defendant. During the bail argument, the Government also proffered that the defendant was recorded in the course of the NYPD's investigation into the AK Houses Crew discussing the sale of .45 caliber ammunition to an NYPD undercover officer. Judge Conroy ordered the defendant released on his own recognizance with no bond, with the condition that the defendant self-surrender and report to the Southern District of New York on Wednesday, January 8, 2020, at 12:30 p.m. (the "Release Order"). At the request of the Government, Judge Conroy stayed the Release Order until 3:30 p.m. on Tuesday, January 7, 2020, to allow the Government time to appeal his bail determination to this Court.

## II. Applicable Law

This Court, as "the court having original jurisdiction over the offense," has jurisdiction over the Government's appeal of the Release Order. *See* 18 U.S.C. § 3145(a)(1); *United States v. El-Edwy*, 272 F.3d 149, 153 (2d Cir. 2001) (holding that, for purposes of a motion under § 3145(a) for revocation of a release order issued by a magistrate judge in another district where the defendant was arrested, "the court having original jurisdiction over the offense" is "the district in which the prosecution of the offense is pending," and noting that "[w]ith respect to the decision whether to detain or conditionally release the defendant, . . . section 3145(a) makes clear that the ultimate authority lies with the district that has the primary interest in the question – the district in which the prosecution is pending"); *see also, e.g.*, *United States v. Dominguez*, 509 F. App'x 28, 29-30 (2d Cir. 2013) (affirming revocation, by a district court in this District, of an order issued by a magistrate judge in the Southern District of Florida releasing a defendant who had been indicted on narcotics-related charges in this District).

A district court reviews *de novo* a magistrate judge's decision to release or detain a defendant pending trial. *Gotti v. United States*, 358 F. Supp. 2d 280, 283 (S.D.N.Y. 2005); *see also United States v. Leon*, 766 F.2d 77, 80 (2d Cir 1985) ("[A] district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of

a detention order should not simply defer to the judgment of the magistrate, but reach its own independent conclusion.").

The Government ultimately bears the burden of showing by a preponderance of the evidence that the defendant poses a risk of flight or, by clear and convincing evidence, that the defendant poses a danger to the community, and that no condition or combination of conditions can address those risks. *See* 18 U.S.C. § 3142(f); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). However, when, as in this case, a defendant is charged with a controlled substance offense with a maximum term of imprisonment that is greater than ten years, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). This presumption requires the defendant to produce evidence that he does not pose a danger to the community or a risk of flight. "Satisfying the burden of production does not," however, "eliminate the presumption favoring detention; it 'remains a factor to be considered among those weighed by the district court.'" *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).

In assessing a defendant's risk of flight and the danger to the community presented by release, Congress directed courts to consider several factors: (1) the "history and characteristics of the person" including "family ties, employment, financial resources, length of residence in the community, [and] community ties"; (2) "the nature and circumstances of the offense charged"; (3) "the weight of the evidence against the person"; and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Title 18, United States Code, Section 3142(e) provides that if a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the defendant shall be detained pending trial. 18 U.S.C. § 3142(e).

"Because the 'rules concerning admissibility of evidence in criminal trials do not apply' to bail hearings, *see* 18 U.S.C. § 3142(f)(2)(B), the parties may proceed by way of proffer, *United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000). As such, courts often base detention decisions on hearsay evidence. *United States v. Boustani*, 356 F. Supp. 3d 246, 251 (E.D.N.Y. 2019), *aff'd*, No. 19-344, 2019 WL 2070656 (2d Cir. Mar. 7, 2019).

## III. Discussion

The defendant has not and cannot overcome the presumption of detention. Even if he could, there are no conditions that could assure the community's safety or that the defendant would appear in this Court in light of, among other things, the seriousness of the offense, the harm caused by the AK Houses Crew's drug dealing, the defendant's significant and sustained role in the AK Houses Crew, the overwhelming nature of the evidence against him, the penalties that he faces, and his continued drug dealing in Vermont, including after six of his co-conspirators were arrested in the New York City area.

### A. The Defendant Poses a Danger to the Community

The defendant was an active member of the AK Houses Crew, which was responsible for supplying at least hundreds of grams of crack cocaine to residents of the New York City area for years. The defendant acted as a street-level dealer, selling crack cocaine in the vicinity of the AK Houses in East Harlem, including mere blocks from several schools and a Metro-North commuter rail station. The AK Houses Crew used firearms in furtherance of its crack cocaine dealing, including to threaten rival drug crews and to defend its territory. Co-conspirators sold both firearms and crack cocaine to NYPD undercover officers on multiple occasions and, as noted above, the defendant himself was recorded offering to sell an undercover NYPD officer ammunition for a .45 revolver, further demonstrating his access to and involvement with firearms.

Moreover, the defendant engaged in the same dangerous conduct well beyond the New York City area. Starting in or about early November 2019, Burlington PD observed the defendant selling crack cocaine in Burlington, Vermont. Indeed, the defendant continued selling crack cocaine in Vermont the day after six of his co-conspirators were arrested on December 11, 2019. His conduct is egregious, spanned a long period of time, and is devastatingly dangerous to this community and to other communities in other states. And as a matter of precedent, the Second Circuit has held that narcotics trafficking presents a danger to the community and should be treated as such for purposes of bail determinations. *See Leon*, 766 F.2d at 81 (2d Cir. 1985).

### B. The Defendant Presents a Substantial Risk of Flight

The seriousness of the offense is also reflected in the seriousness of the penalties now facing the defendant, with a mandatory minimum 10-year sentence because of the large amounts of crack cocaine that he and the rest of the AK Houses Crew distributed. In light of the very substantial penalty he is facing, the defendant has a strong incentive to flee.

Furthermore, the evidence against the defendant is overwhelming, compounding the flight risk. The evidence includes, among other things, more than a year of surveillance, including pole camera footage, showing the defendant and his co-conspirators dealing drugs in the vicinity of the AK Houses. The evidence also includes multiple recorded undercover buys of crack cocaine from the defendant and recorded conversations between the defendant and an undercover regarding the defendant's willingness and ability to obtain and sell ammunition. The strength of the proof militates strongly in support of detention.

In addition, given the defendant's extensive crack dealing in the New York City area, and his recent crack cocaine dealing in Vermont – where we understand crack cocaine sells for a significantly higher price than it does in the New York City area – we believe the defendant likely has access to cash assets that give him the means to flee.

Finally, despite his young age of 22 years, the defendant has a prior conviction for a controlled substance offense, which did not deter him from continuing to traffic narcotics. Moreover, the defendant appears to have been on parole from that conviction during the course of this conspiracy, *i.e.*, while he was actively selling crack cocaine in and around the AK Houses and

in Burlington, Vermont, further indicating the defendant's apparent disregard for the criminal justice system.

In light of the foregoing facts, there is no reason to believe this defendant will appear for Court as directed.

### IV. Conclusion

There are no conditions of release that could reasonably assure the defendant's continued appearance in this case or mitigate the harm that could come to others should the defendant be released pending trial. Accordingly, in light of the foregoing, the Government respectfully requests that the Court stay the defendant's release and order the defendant detained pending the defendant's transfer to this District, at which time the parties can be further heard by the Court on the issue of bail.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: ___/s/_____

Louis A. Pellegrino / Juliana N. Murray
Assistant United States Attorneys
(212) 637-2617 / -2314

The application is ☑ granted.
~~denied.~~

Andrew L. Carter Jr, U.S.D.J.
Dated: January 7, 2020
NY, New York